.Harriët B. Derby & others *vs.* Henry Hall & another.

D. and the Proprietors of the Middlesex Canal entered into " articles of agreement, grant
of land, and covenants," by which, after reciting that said proprietors, pursuant to their
charter, had taken certain land of D., described by metes and bounds, part of the T. H.
Farm, for the purposes of their canal, D., in consideration of the payment of the sum
assessed for the damages occasioned to him by such taking, and of an additional sum
" in lieu of erecting and maintaining bridges," released and conveyed to said proprietors
" the aforedescribed piece of land, lying on both sides the trunk of the said canal, for
the purposes of being used and improved as appurtenant to said canal, so long as sai l
canal shall be continued, and no longer; to have and to hold the same described and
bounded land to them the said proprietors, and to their heirs and successors, so long as
the same may be used and improved as appurtenant to said canal as aforesaid; " and
released them from " all claim for damages and expenses for building and maintaining
bridges over the said canal, within the limits hereinbefore described." *Held,* that these
articles conveyed to the proprietors of the canal an easement only in the land described,
for the purposes of their canal, and during its continuance; and that a subsequent

conveyance by D. of the T. H. Farm, " excepting such parts thereof as have been conveyed to the Middlesex Canal Corporation," passed a fee in the whole farm, subject only to such easement.

WRIT OF ENTRY, brought by the heirs of General Elias Hasket Derby, to recover a tract of land in Somerville, lately used by the Proprietors of the Middlesex Canal, a corporation duly established by *St.* 1793, *c.* 21. The parties submitted the case to the court upon a statement of facts, of which the material part is as follows :

On the 18th of September 1801, Theodore Lyman conveyed to General Derby " a certain farm, situated in Charlestown, and known by the name of Ten Hills, containing about three hundred acres, and bounded north and northeasterly on Medford River, and northwesterly on land of Col. Royall," &c.

On the 5th of December 1808, General Derby and the Proprietors of the Middlesex Canal executed the following indenture : " Articles of agreement, grant of land, and covenants, entered into by and between Elias Hasket Derby, of Salem in the county of Essex, Esquire, on the one part, and the Proprietors of the Middlesex Canal in their corporate capacity on the other part, witness that whereas the said proprietors, pursuant to the act of their incorporation, and several acts since that act, passed for extending said canal to the waters of Charles River, have taken certain land of the said Derby, which is in the Ten Hills Farm, so called, for the purposes of forming, accommodating and improving the said canal, which land so taken is described as follows : [Here followed a particular description, by metes and bounds, courses and distances, of a strip of land extending from Royall's land on the northwest to land of the heirs of Timothy Tufts on the southeast, a distance of nearly two hundred and eighty rods, along and including the trunk of said canal, and varying in width from five to six rods; and bounding for about one fifth of its northerly boundary on the Medford Turnpike, which had been constructed since Lyman's conveyance to Derby, and separated the canal from the Medford River; and for a large part of the residue of its length consisting of a valuable body of clay, a portion of the land adjoining

which on both sides has been for the last half century principally used for brickyards. The land described in these articles was that demanded in the writ.]

" And whereas the price of the same land, and the damages done to the said Derby's estate, and the expenses of erecting and maintaining bridges within the boundaries . aforesaid on and over the said canal, for the use of the said Derby, his heirs and assigns, and all other persons who may be in the occupation and improvement of the estate whereof the land taken as aforesaid was part, (called the Ten Hills Farm as aforesaid,) have been settled and agreed on to be the sum of two thousand six hundred and eighty two dollars, being amount of damages assessed, and one thousand dollars in lieu of erecting and maintaining bridges; which sums have been duly paid by the said proprietors to the said Derby, and the receipt whereof is hereby acknowledged, and the said proprietors, their heirs, successors and assigns, thereof acquitted and discharged; the said Derby, in consideration thereof, doth hereby bargain, sell, grant, release and convey to the said proprietors the afore described piece of land lying on both sides the trunk of the said canal, for the purposes of being used and improved as appurtenant to said canal, so long as said canal shall be continued, and no longer. To have and to hold the same described and bounded land to them the said proprietors, and to their heirs and successors, so long as the same may be used and improved as appurtenant to said canal as aforesaid.

" And the said Derby doth hereby release to the said proprietors all claim for any other and further damages, excepting what may arise in effecting the intention of the parties in this contract expressed; and excepting also such unforeseen damage and injury, if any, as may hereafter be occasioned by overflowing or otherwise injuring, by means of the canal, the other lands adjoining the land hereby released as aforesaid to the use of the proprietors aforesaid. And also the said Derby doth release all claim for damages and expenses for building and maintaining bridges over the said canal within the limits hereinbefore described. The whole number of said bridges, viz. four,

to be maintained by said Derby as aforesaid, and by his heirs and assigns.

"And the said proprietors, in consideration of the premises, do contract and agree to and with the said Derby, his heirs and assigns, that he and they may build and erect over and across the said canal, within the boundaries before described, three bridges, in addition to the one now there existing, which shall be done at his own expense or the expense of his heirs and assigns; and that he and they may forever, at his and their own expense, maintain the same four bridges and improve the same, for the necessary use, improvement and occupancy of the same farm called the Ten Hills Farm; provided the same bridges are each and all of them formed so high above the water of the canal as not to obstruct the navigation thereof, or in any way to impede the business which may be done thereon."

General Derby, on the 17th of June 1809, executed to Walter Channing a mortgage, and on the 21st of March 1814, a release of the equity of redemption, of the Ten Hills Farm, bounded as in the deed to him from Lyman, and with a reference to that deed, " excepting such parts thereof as have been conveyed to the Medford Turnpike and Middlesex Canal Corporations respectively," with full covenants of warranty. And the tenant Hall has acquired all the right, title and estate in the Ten Hills Farm, with all the rights, privileges, covenants, agreements and appurtenances to the same belonging, which Channing acquired under his two deeds from General Derby.

The Proprietors of the Middlesex Canal maintained a tow path, and kept the banks of the canal in repair, upon the premises in question, until the 8th of July 1852, when they discontinued the canal, and executed a deed of quitclaim of the demanded premises to the demandants.

*J. Parker & E. H. Derby,* for the demandants. If it had not been the intention, of the parties to the indenture of December 5th 1808, to convey to the Proprietors of the Middesex Canal a greater interest in the demanded premises than that acquired by them by taking the same under their charter, there was no occasion for any deed. The title of the indenture shows that

it was intended to be a "grant of land," and not of a mere easement. Though land will not pass as appurtenant to land; yet land may be conveyed to be used as appurtenant to land, and so that, on its ceasing to be so used, the estate of the grantee shall cease. The conveyance, from Derby to the proprietors of the canal, of "a piece of land," by metes and bounds, "for the purposes of being used and improved as appurtenant to said canal, so long as said canal shall be continued, and no longer; to have and to hold the same described and bounded land to them the said proprietors, and to their heirs and successors, so long as the same may be used and improved as appurtenant to said canal as aforesaid," was a conveyance of a limited or determinable fee, leaving in the grantor a possibility of reversion, which descended to his heirs, and on the discontinuance of the canal gave them a perfect title. *Jackson* v. *Pike*, 9 Cow. 69 *Wood* v. *Cheshire*, Superior Court of N. H. 1854.

This reversion, or possibility of reversion, was never alienated. The deeds, from Derby to Channing, of the Ten Hills Farm, each contained an exception of "such parts thereof as have been conveyed to the Middlesex Canal Corporation." And this exception is valid, and not repugnant to the residue of the deed. *Sprague* v. *Snow*, 4 Pick. 56. The description is rendered sufficiently certain by the reference to the former conveyance, which was by metes and bounds. *Allen* v. *Bates*, 6 Pick. 460. "Farm," in the deeds to Channing, means land, and not a mere interest therein. Bouvier Law Dict. Farm. *Commonwealth* v. *Carmalt*, 2 Binn. 238. 4 Cruise Dig. tit. 32, *c.* 21, § 41. And the exception of "parts thereof," particularly set forth by metes and bounds in the conveyance referred to, is of part of the farm or land. The exception does not attach to the term "conveyed," which is merely used to designate the land excepted, as previously set forth by metes and bounds in the indenture. Had it been Derby's object merely to restrict or qualify his covenants of warranty, (and there is nothing from which this can be presumed,) he would not have excepted the land itself, but would have conveyed the farm subject to the rights acquired by the proprietors of the canal. Had he intended to convey his

possibility of reversion in the part excepted, he would, instead of using the word " excepting," have conveyed the whole farm, " reserving " to the Proprietors of the Middlesex Canal an estate during the continuance of the canal. This clause is an exception; for the part excepted is a part of the thing granted, severable therefrom, and in which the grantor has an interest; and not a reservation, which is something newly created. Bouvier Law Dict. Exception. *Doe* v. *Lock*, 4 Nev. & Man. 826, and 2 Ad. & El. 745. *Cardigan* v. *Armitage*, 3 Dowl. & Ryl. 420, and 2 B. & C. 206. Shep. Touchst. 78. " What will pass by words in a grant, will be excepted by the same or the like words in an exception." 3 Dowl. & Ryl. 420, and 2 B. & C. 206.

The grant of a tract of land, intersected by or bounding upon a road, canal or turnpike, does not convey a fee in the land under such road, canal or turnpike, as incident or appurtenant to the grant, when the land under the same is excluded by metes or bounds, or by the terms and obvious import of the deed. *Tyler* v. *Hammond*, 11 Pick. 193. *O'Linda* v. *Lothrop*, 21 Pick. 292. *Fenner* v. *Sheldon*, 11 Met. 521. *Swift* v. *Prentice*, 11 Met. 464. *Harris* v. *Elliott*, 10 Pet. 25. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c.* 21, § 31, *note*. 3 Kent Com. (6th ed.) 434.

*S. E. Sewall*, for the tenants. The articles of agreement between General Derby and the Proprietors of the Middlesex Canal only granted an easement to the corporation, and did not convey the soil. The corporation acquired only an easement in land taken by them under their charter. *St.* 1793, *c.* 21, §§ 2, 3. *Harrington* v. *County Commissioners*, 22 Pick. 266. *Harback* v. *Boston*, 10 Cush. 295. The articles of December 5th 1808 recite proceedings under the statute, by which Derby's land was taken, and his damages assessed, and the corporation required to maintain bridges; and show the agreement of the parties to confirm these proceedings, in all respects, except in substituting the payment of $1,000 in lieu of the obligation to maintain bridges. Shep. Touchst. 88. The words " for the purposes of being used and improved as appurtenant to said canal," restrict the grant to an easement only. *Blake* v. *Clark*,

**6** Greenl. 436. *Howard* v. *Wadsworth*, 3 Greenl. 471. *Miller* v. *Miller*, 15 Pick. 57. *Doe* v. *Maden*, 1 Nev. & Man. 533, and 4 B. & Ad. 880. The words " as appurtenant to said canal," import an easement only. Land cannot pass as appurtenant to land. *Otis* v. *Smith*, 9 Pick. 293. *Harris* v. *Elliott*, 10 Pet. 54. Com. Dig. Appendant & Appurtenant, C; Grant, E. 9. It might even be argued that the easement conveyed by the articles was only in the " land lying on both sides the trunk of the said canal," thus expressly excluding the trunk itself, the parties probably considering the title to that as secured by the original taking.

The subject granted being an easement, the habendum cannot enlarge it to a conveyance of the soil itself; for the habendum can never enlarge the subject matter of the grant. Vin. Ab. Grants, I. a. pl. 1, 2, 5, 6, 7; I. a. 4. pl. 1. Bac. Ab. Feoffment, C. § 2. 4 Cruise Dig. tit. 32, *c.* 21, §§ 73, 74. *Moore* v. *Magrath*, Cowp. 9. *Manning* v. *Smith*, 6 Conn. 289. Nor can entitling the articles a " grant of land " change the technical quality of the estate conveyed, which must be decided by the words of the grant itself. *Doe* v. *Wood*, 2 B. & Ald. 724.

As the proprietors of the canal took only an easement, leaving the fee in the soil in Derby, the deeds from Derby to Channing, purporting to convey the whole Ten Hills Farm by boundaries which embrace the demanded premises, passed all Derby's interest in them; and the exception of " such parts thereof as have been conveyed to the Medford Turnpike and Middlesex Canal Corporations respectively," excepted the same estates in quantity and quality as had been conveyed to those corporations, and no greater interest, in the lands occupied by the road and canal. *Peck* v. *Smith*, 1 Conn. 103. *Hart* v. *Chalker*, 5 Conn. 311. *Leavitt* v. *Towle*, 8 N. H. 96. *Blake* v. *Clark*, 6 Greenl. 436. *Howard* v. *Wadsworth*, 3 Greenl. 471. *Sanborn* v. *Hoyt*, 24 Maine, 118. In an exception, as in a grant, a fee cannot be excepted without words of inheritance. *Curtis* v. *Gardner*, 13 Met. 457. The reason for excepting what Derby had already conveyed to the corporation was, that he would have been liable on his covenants of warranty if he had not made the exception.

In making a mortgage, Derby could have no wish to retain a remote reversionary possibility; whereas Channing, in taking the security, would desire to obtain all Derby's interest in the whole farm, including the road and canal. If Derby had intended to reserve any reversionary interest in the land occupied by the canal, he would have expressed it.

If it is doubtful whether the exception, by its terms, is an exception of the interest previously granted to the corporations in the demanded premises; or of the land itself, without reference to the estates of the corporations; the first construction is to be adopted, as being most favorable to the grantee. *Lofield's case,* 10 Co. 106 *b.* Shep. Touchst. 83, 87, 100. 4 Kent Com. (6th ed.) 468. *Wyndham* v. *Way,* 4 Taunt. 316. *Lincoln* v. *Wilder,* 29 Maine, 182. *Winslow* v. *Patten,* 34 Maine, 25. *Worthington* v. *Hylyer,* 4 Mass. 205. *Ashley* v. *Pierce,* 18 Pick. 275. *Jackson* v. *Blodget,* 16 Johns. 178. *Cocheco Manuf. Co.* v. *Whittier,* 10 N. H. 305.*

BIGELOW, J. Several questions, involving nice and abstruse distinctions in the law of real property, have been very ably and elaborately argued by the learned counsel in this case; but the consideration of them, in the view which we have taken of the case, is immaterial to its decision. In the construction of deeds, when the language in which a grant is expressed is ambiguous, or capable of a double interpretation, it is necessary to look at the situation of the parties at the time of the conveyance, the circumstances attending the transaction, the purposes and objects of the conveyance, and the recitals, if any, which accompany and give significance to the operative words of the

---

* Two other questions were argued by the counsel, namely, whether, if the court should hold that the proprietors of the canal took by the indenture an estate in fee, a conveyance of the reversion or possibility of reversion, made by Derby before the determination of such estate in fee by the discontinuance of the canal, would be binding upon him and his heirs; and whether the tenants, if they acquired no title in the demanded premises through Channing, had gained one by adverse possession. As the court did not find it necessary to decide either of these points, the arguments upon them, as well as the facts relied on to show adverse possession, are omitted.

grant. 1 Greenl. Ev. §§ 286, 287. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c.* 20, § 2, *note.* *Adams* v. *Frothingham,* 3 Mass. 352. By a careful consideration and application of these well settled rules of construction, we are often enabled satisfactorily to ascertain and interpret the true intent of parties in their use of words, which, without some aid beyond the mere terms of the grant, would be doubtful and obscure.

The present case seems to us to be one in which the application of these rules is eminently necessary and proper. The title of the demandants depends on the nature and quality of the estate which was conveyed by their ancestor, E. H. Derby, by the articles of agreement entered into between him and the Proprietors of the Middlesex Canal on the 5th of December 1808. The words of the grant are by no means clear and definite in the description or statement of the extent of the interest or estate, intended to be conveyed, in the land described in the instrument. The boundaries and admeasurements are sufficiently intelligible and accurate. The question is not as to the location or description of the land, but as to the kind and quality of the estate or interest in it, which it was the intent of the grantor to convey, and of the grantee to take. The terms of the grant (the land having been previously described by metes and bounds in the recital) are as follows : " The said Derby doth hereby bargain, sell, grant, release and convey to the said proprietors the aforedescribed piece of land, lying on both sides the trunk of the said canal, for the purpose of being used and improved as appurtenant to said canal, so long as said canal shall be continued, and no longer ; to have and to hold the same described and bounded land to them the said proprietors, and to their heirs and successors, so long as the same may be used and improved as appurtenant to said canal as aforesaid." It is obvious that this was not a conveyance of an absolute estate in fee. If the words of the grant stood by themselves, without any aid in their construction to be derived from the previous recital, or the condition of the parties and the circumstances attending the transaction, it would, at most, be a conveyance of the land for a limited purpose and for a

limited time only. But in this view, supposing it to be a grant of a base or determinable fee, it would be difficult to give any force or effect to the words which limit the use and improvement of the land " as appurtenant to said canal; " because the land granted and described by metes and bounds includes the canal itself, as well as the land on both sides of it. To interpret the grant literally, therefore, it would be necessary to hold that the grant of the land covered by the canal, or composing its trunk, was to be appurtenant to itself, which would be manifestly absurd; and yet this phrase, " appurtenant to said canal," is used apparently by design; for it is repeated in the habendum. Nor can it be held, that this clause was intended to apply only to the land lying on the sides of the canal, exclusive of the trunk of the canal itself; because, on the theory that the instrument conveys a limited fee in the premises described, this would be to hold that a part of land, conveyed by one entire description, was made appurtenant to the remainder of the land included in the same description, without words indicating such an intent. If therefore full force and effect is given to all the terms in which the grant is expressed, it is difficult, if not impracticable, to put an intelligible and consistent interpretation upon them, unless they can be read in the light of surrounding circumstances, and with reference to the purposes and objects to effect which this grant was made. But with these aids in the construction of the instrument, there can be little doubt as to its legitimate interpretation.

The Proprietors of the Middlesex Canal, for the purpose of the construction and maintenance of water communication between the seaboard and the interior of this state, were empowered by their act of incorporation, ( *St.* 1793, *c.* 21,) and several acts in addition thereto, ( *Sts.* 1794, *c.* 67 ; 1798, *c.* 16 ; 1802, *c.* 98,) to take and appropriate " the property of private persons, as in the case of highways, for the public use; " and provision was made in the said acts for the mode of effecting this appropriation, and the assessment of damages thereby occasioned to private property. Under this power, the corporation, by taking land for a public use, would acquire no other

21 *

interest or title than that which was necessary to enable them to construct and maintain their canal; which, on familiar and well settled principles, would be only a right of way or easement in the soil, the fee still remaining in the original owner. *Perley* v. *Chandler*, 6 Mass. 454. *Harrington* v. *County Commissioners*, 22 Pick. 266.

By reference to the recital in the articles of agreement between Derby and the proprietors of the canal, which precedes the grant in question, it appears that the corporation had taken, under the authority conferred upon them by statute, the same parcel of land which is the subject of the grant, and that damages for such taking had been assessed at the sum of two thousand six hundred and eighty dollars. It also appears that the consideration of the grant was the same as the sum assessed as damages for such taking.

Now, bearing in mind the situation and relation of the parties at the time of the grant; that Derby was then the owner in fee of a large tract of land; that the proprietors were empowered to take, and had actually taken, by the right of eminent domain, a certain portion of it, which had thereby become condemned to a public servitude; that an easement or right of way was all the estate or interest in the land, which it was necessary for the proprietors to acquire and hold, in order to construct and maintain their canal; that damages for such taking had been assessed at a certain sum; and that the grant was made in consideration of the same sum at which damages for the taking had been assessed under the statute; we think it hardly admits of a doubt, that it was the intention of the parties that the corporation should take by the grant no other or greater estate or interest in the land, than that which they would have acquired, if their title had been consummated by a return of the assessment of damages, according to the provisions of the statute, instead of by the grant in question from the owner of the soil. The effect, therefore, of the instrument as a whole is this; the corporation had taken, pursuant to the statute, an easement in the soil, for which a specific sum in damages had been assessed to the owner; this precise sum was received

by the owner, and in consideration thereof he conveyed and confirmed to the corporation, by the grant in question, the same interest in the premises, which they had taken and would have acquired therein, under the authority conferred on them by the statute. The words of the grant do not necessarily import a fee in the estate, even of a limited or determinable nature ; and it is difficult to believe, in the absence of any decisive indication of such an intent, that it was the purpose of the grantor, in consideration of the same sum awarded to him for an easement over his land, to grant to the proprietors any greater interest in it. On the contrary, the conveyance of an easement only is entirely consistent with the terms of the grant, which conveys the land " for the purpose of being used and improved as appurtenant to said canal, so long as said canal shall be continued, and no longer." This may well be construed as a conveyance of the use and improvement of the land for the purpose of a canal, which is equivalent to an easement in the soil for a specific purpose, and not a grant of the land itself. It did not give the whole use of the land, but only a partial and limited one ; all other uses remained in the grantor, who continued the owner of the soil, subject only to this special use or easement. Words, which by themselves would convey the soil, when accompanied by others which show that a limited use only in the soil was intended, will be held to convey an easement only. *Howard* v. *Wadsworth*, 3 Greenl. 471. 4 Cruise Dig. tit. 32, c. 20, § 15. *Thorpe* v. *Thorpe*, 1 Ld. Raym. 235.

It was urged, on the part of the demandants, that the parties would not have resorted to articles of agreement and to a conveyance of the right or easement in the soil, if it was not intended to grant to the corporation a different and larger right or interest in the land than that which would have been acquired by them if they had consummated their statute title. But the answer to this suggestion is found in the fact, that the articles of agreement were not entered into solely for the purpose of conveying to the corporation a right to construct and maintain their canal through the land of Derby. The parties had another important object to effect, concerning the erection

and maintenance of bridges over the canal, which could not have been attained except by means of a mutual agreement between them, and a release to the corporation by Derby of the duty, otherwise imposed on them by law, of erecting and maintaining the bridges. For this reason, as it was necessary to settle some of the mutual rights and obligations of the parties by a written agreement, it was doubtless deemed expedient to include in its terms all that was required in order to enable the corporation to construct and maintain their canal through Derby's land.

It was also urged, that the parties had themselves declared their own interpretation of the instrument, by calling it, in the introductory clause, " Articles of agreement, grant of land," &c. But this is a very slight circumstance, which cannot control the clear intent of the parties manifested in other and more important parts of the instrument. Besides ; it was a grant of a large and important easement or servitude, which, during its continuance, would engross a great portion of the beneficial interest in the land, and might therefore be termed, in a certain sense, though not with technical accuracy, a grant of land.

Nor do we think it of any importance, in the construction of the instrument, that the premises are set out by metes and bounds. This was necessary, whether a fee or an easement was the subject of the grant, in order to define and limit the territory over which the title, whatever it was, which was con veyed by the instrument, was to extend. So too in regard to the clause in the habendum, by which the grant was made to the proprietors and to " their heirs and successors." The object of this inartificial phrase was to vest an interest or estate in the corporation, which they might pass to assignees, in case of a sale of their franchise ; and was as necessary in the case of a conveyance of an easement, as of a grant of an interest or estate of a higher nature. No aid, therefore, in the construction of the grant, can be derived from these clauses in the instrument of conveyance.

This view of the nature of the interest conveyed to the proprietors by Derby, by the articles of agreement, leads us to

a satisfactory solution of the remaining question in the case. The deeds from Derby to Walter Channing convey the entire estate called the Ten Hills Farm, by boundaries which embrace the demanded premises, and are sufficient to convey all his interest and title in the estate, except that which was saved by the terms of the exception contained in both deeds. That exception was " of such parts thereof as have been conveyed to the Medford Turnpike and Middlesex Canal Corporations respectively." This language may be susceptible of a double interpretation. If it had been in terms an exception of the piece of land described in the conveyance to the canal corporation, the construction contended for by the demandants would have been the clear and necessary interpretation of the deed; the title to the demanded premises would then have remained in Derby, subject only to the easement of the canal corporation ; and would be now vested in the demandants as his heirs at law. But the use of the words " such parts " of the estate, renders the terms of the exception somewhat equivocal. They might perhaps be construed, without any violation of sound rules of interpretation, to mean an exception either of the land itself, or of the same interest and estate only in the land which had been conveyed to the canal corporation, namely an easement.

That the latter construction is the true one, and in conformity with the intent of the parties, is manifest, when the situation of the parties with reference to the estate, and the nature of the premises to which the exception applies, are taken into consideration. The grantor, Derby, having conveyed to the canal corporation a large easement in the demanded premises, engrossing to a great extent their beneficial use, and the extinguishment of which depended on a contingency then exceedingly distant and improbable, in making a conveyance of the whole farm could have had no motive for retaining in himself the fee of this small fragment of the entire estate. It is difficult to believe that he could have intended a reservation to himself and his heirs of so slight and remote an interest. So too it would be inconsistent with any reasonable hypothesis that the grantee of Derby would take a conveyance of the entire farm with an

exception out of it of a narrow strip of land running through its entire length and separating the two portions lying on either side of it from each other, without any grant of a right of way or means of access between the different parts of the same estate, both of which were then used and improved as a farm, in connection with each other. The stipulation in the articles of agreement between Derby and the proprietors of the canal, concerning the erection and maintenance of bridges over the canal, only secured a right to Derby, but imposed no duty on him. This was a right which would not pass by his deeds to Channing, if the construction contended for by the demandants were the true one. If the title to the demanded premises remained in Derby, by virtue of the exception, the result would be to cut off Channing and his grantees from all right to pass over them from one part of the farm to the other. Nothing but language of the most clear and explicit character would justify a construction so plainly contrary to the intent of parties, as manifested by the subject matter of the grant, in connection with its attending circumstances.

Besides; there was a sufficient reason for the insertion of the exception, entirely in harmony with this intent of the parties. The previous conveyance to the proprietors of the canal by Derby rendered it necessary for him to exclude by the terms of his grant the right or interest which he had previously conveyed. Otherwise, by the description in his deeds to Channing, comprehending as it did the whole farm, he would have conveyed what he had already granted to another, and thus rendered himself liable on his covenants of warranty.

Aside however from these considerations, which seem to show very clearly that the intent of the parties was not to except the land itself, but only the right or interest which had been granted to the two corporations, if we confine ourselves to the language of the exception, and apply to it the ordinary rule of construction that, where the words of a grant are doubtful, they are to be construed most strongly against the grantor, we are brought to a like result. Taking the case in a light most favorable to the demandants, the exception is susceptible, as

we have already said, of only two interpretations. It either excluded from the grant the land itself to which it relates, or it excepted only the right and interest which had been conveyed to the two corporations. The latter construction being the one which gives to the words of the grantor the most strict inter-pretation against himself, and the most favorable to the grantee, must prevail.

This proceeds however on the ground, that either of those interpretations would equally satisfy the terms of the exception. But by a strict construction of the language, we think it cannot be held to be an exception of the land. It does not except the land itself, but only "such parts thereof as have been conveyed" to the two corporations. This, as we have already seen, was only an easement. An easement in the estate therefore was all that was excepted out of the grant.

It follows, as a necessary consequence of these views, that the demandants can claim no title to the demanded premises under this exception. The conveyance to the proprietors of the Mid-dlesex Canal being the grant of an easement in a portion of the farm, the fee of the soil in that portion remained in Derby, and not being excepted out of the grant to Channing, it passed to him under the deeds from Derby, and through him to the ten-ants, who now have the whole estate. The easement having expired by the limitation contained in the grant thereof, that is, by the final discontinuance of the canal, the tenants now hold the demanded premises discharged of the servitude.

*Judgment for the tenants.*